UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOANNE MOSKOVIC,
ALEXANDER MOSKOVIC,

     Plaintiffs,

v.

CITY OF NEW BUFFALO,

     Defendant.

_____/

Case No. 1:21-cv-144

Hon. Hala Y. Jarbou

## **OPINION**

     Plaintiffs Joanne and Alexander Moskovic own a vacation rental home (the "Property") in the City of New Buffalo.  A city ordinance requires local homeowners to obtain a permit to rent their homes on a short-term basis.  In May 2020, the City decided to impose a moratorium on the issuance of these permits.  That moratorium has prevented Plaintiffs from obtaining a permit to use their home as a short-term rental.  They brought this action to force the City to change course. Before the Court is Plaintiffs' motion for a preliminary injunction to halt enforcement of the moratorium.  The Court heard oral argument on Plaintiffs' motion on March 23, 2021.  For the reasons herein, the Court will deny the motion.

## **I. BACKGROUND**

     The Moskovics live in a suburb of Chicago.  They purchased the Property in 2014 "as an investment property with the specific intent to use the property as a short-term rental."  (Compl. ¶ 9, ECF No. 1.)  At the time, the City did not require homeowners to obtain a permit to use their properties as short-term rentals.  The Moskovics rented the Property on a regular basis for seven years, advertising it for such use on prominent rental websites.

On April 15, 2019, the City adopted Ordinance 237, which requires homeowners to apply for a permit to use their homes as short-term rentals.  The Moskovics continued renting their home, however.  They did not apply for a permit because they did not learn about the new ordinance until January 2021, when a city official informed them of it.

Meanwhile, the City Council became concerned about the local impacts of using homes as short-term vacation rentals. Among other things, the City was concerned about the decreasing number of long-term residents, decreasing enrollment in schools, decreasing availability of long-term housing, a rise in vacant homes during the off season, and nuisances created by a rise in summer tourism.  (ECF No. 13-3.)  On May 18, 2020, it adopted a resolution ("Resolution 2020-11") that imposed an eight-month moratorium on the issuance of permits for short-term rental units.

On July 15, 2020, the City Council adopted another resolution ("Resolution 2020-16") that carved out an exception to the moratorium for property owners

> who applied for a permit on or before July 15, 2020 if the applicant: (1) took title to the property between March 1, 2020 and May 18, 2020 with the intent to use the property as a short-term rental; (2) recently completed construction or renovations on the property with the intent to use the property as a short term rental; (3) entered into a contract, on or before May 18, 2018 to purchase the property with the intent to use it for short term rental, but had not yet closed as of that date; or (4) as of May 18, 2018, had a valid building permit for the construction of a new dwelling or renovation of an existing dwelling where the construction or renovations were intended to render the property suitable for short term rentals.

(*Id.* ¶ 37.)

On December 21, 2020, the City extended the moratorium for another eight months through August 31, 2021.

By the time that Plaintiffs learned of the permit requirement, they were already in violation of the City's ordinance because they were renting their home without a permit.  When they tried to obtain a permit in February 2021, they learned that the City would not process their application

due to the moratorium.  They brought this action to require the City to allow them to continue renting their home.

In their complaint, Plaintiffs claim that the moratorium is invalid because it acts as a suspension or modification of Ordinance 237, and the City cannot suspend or modify an ordinance through a resolution.  Plaintiffs also claim that the City's adoption of Ordinance 237 and/or the moratorium (1) burdens interstate commerce in violation of the Commerce Clause of the Constitution, (2) deprived Plaintiffs of their rights under the Constitution, including the right to equal protection and the right to procedural and substantive due process, and (3) violated Michigan's Open Meetings Act, Mich. Comp. Laws § 15.623.

Plaintiffs argue that they are likely to succeed on these claims.  They ask the Court to enter an order allowing them to continue operating their property as a short-term rental or, in the alternative, enjoining the City from using the moratorium to prevent Plaintiffs from applying for and obtaining a short-term rental permit.

## II. STANDARD

"'It is frequently observed that a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion.'" *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11A C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure* § 2948 (2d ed. 1995)).  The Court considers four factors when deciding whether to grant a preliminary injunction:

(1) whether the movant has a "strong" likelihood of success on the merits;

(2) whether the movant would otherwise suffer irreparable injury;

(3) whether issuance of a preliminary injunction would cause substantial harm to others; and

(4) whether the public interest would be served by issuance of a preliminary injunction.

*McPherson v. Mich. High Sch. Athletic Ass'n*, 119 F.3d 453, 459 (6th Cir. 1997) (en banc).

"Courts sometimes describe this inquiry as a balancing test.  And that's true, to an extent; district courts weigh the strength of the four factors against one another.  But even the strongest showing on the other three factors cannot 'eliminate the irreparable harm requirement.'  That factor is indispensable[.]"  *D.T. v. Sumner Cnty. Schs.*, 942 F.3d 324, 326-27 (6th Cir. 2019)  (quoting *Friendship Materials, Inc. v. Mich. Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982)) (citations omitted).

### III. ANALYSIS

#### A. Likelihood of Success

Perhaps Plaintiffs' most promising claim is that the moratorium is invalid because the City's resolutions effectively suspend Ordinance 237 and operate as a ban on the use of homes as short-term rentals in most cases.  A city can suspend or modify its ordinance through another ordinance, but it generally cannot do so through a resolution, as the City did here.  *See McCarthy v. Vill. of Marcellus*, 189 N.W.2d 80, 85 (Mich. Ct. App. 1971) ("An ordinance or resolution cannot be amended, repealed, or suspended by another act by a council of less dignity than the ordinance or resolution itself."); *Lorencz v. Brookfield Twp.*, No. 319235, 2015 WL 1931967, at *2 (Mich. Ct. App. Apr. 28, 2015) ("[A]n ordinance may only be repealed by an act of equal dignity, which requires the township to repeal by ordinance and not resolution."); *see also Kalamazoo Mun. Utilities Ass'n v. Kalamazoo*, 76 N.W.2d 1, 5 (Mich. 1956) ("A resolution is not a law or an ordinance but merely the form in which a legislative body expresses a determination or directs a particular action.  An ordinance prescribes a permanent rule for conduct of government, while a resolution is of special or temporary character.").

On the other hand, some Michigan case law indicates that cities can use resolutions to *temporarily* suspend consideration of permits or applications for various land uses.  For instance,

in *Dan & Jan Clark, LLC v. Charter Township of Orion*, No. 284238, 2009 WL 1830749 (Mich. Ct. App. June 25, 2009), the Michigan Court of Appeals observed that "'[r]esolutions are for implementing ministerial functions of government for short-term purposes.  Ordinances are for establishing more permanent influences on the community itself.'"  *Id.* at *4 (quoting *Rollingwood Homeowners Corp. v. Flint*, 191 N.W.2d 325, 328 (Mich. 1971)).  In that case, a city's resolution deferring consideration of applications to rezone property did not operate as a "de facto ordinance" because it "lasted less than a year, even with the extension, making it clearly short-term."  *Id.*  Also, "it did not create new procedures or even affect *all* petitions related to rezoning and special use.  Rather, it simply deferred consideration of any *new* petitions until after a review of the master plan."  *Id.* (emphasis in original).

Here, the City's moratorium is set to last for a total of approximately 15 months, making it longer than the one in *Dan & Jan Clark*, but it is arguably akin to a temporary suspension of applications for permits while the City develops a longer-term plan for managing the use of homes for short-term rentals.  And the length of the moratorium may be explainable by the unusual circumstances of the past year, including the pandemic and the unexpected death of the City Manager.

Plaintiffs rely on *Tuscola Wind III, LLC v. Ellington Township*, No. 17-cv-11025, 2018 WL 1291161 (E.D. Mich. Mar. 13, 2018), which involves a similar set of facts; however, that opinion is not binding.  And although that opinion has persuasive value, the Court's duty is to apply the law as a Michigan court would.  Thus, the Court would be inclined to give more weight to an opinion from the Michigan Court of Appeals than one from the district court of the Eastern District of Michigan.  In short, the validity of the moratorium is a close question, with reasonable arguments on both sides.

Plaintiffs' constitutional claims are much weaker.  As to their claim under the Commerce Clause, there is nothing discriminatory in the Ordinance or the moratorium as far as interstate commerce is concerned.  "Courts generally reserve dormant Commerce Clause review for laws that protect in-state economic interests at the expense of out-of-state competitors."  *Garber v. Menendez*, 888 F.3d 839, 843 (6th Cir. 2018).  State laws that explicitly discriminate against interstate commerce "are almost always invalid," as are laws "that appear neutral but have an impermissibly protectionist purpose or effect."  *Id.*  In this case, however, there is no evidence of discrimination or protectionist purpose or effect.  The ordinance and the moratorium treat residents and non-residents of the state the same.  In addition, they treat interstate and intrastate commerce the same.  Residents of Michigan who wish to rent a home in New Buffalo on a short-term basis (as rentors or rentees) are in the same position as non-residents.

Where a law "has only an incidental effect on interstate commerce, laxer review applies. Such laws will be upheld unless they impose burdens on interstate commerce that clearly exceed their local benefits."  *Id.* (citing *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 144-46 (1970)).  In this case, however, there is no indication that the ordinance or moratorium imposes any undue burden whatsoever on interstate commerce.  To the extent that the ordinance and moratorium prevent homeowners or renters from using homes in New Buffalo for short-term rentals, the burden is the same regardless of whether the homeowner or renter are from this state or not.  Plaintiffs fail to cite any relevant authority in which a court struck down a law or regulation under the Commerce Clause because the regulation inhibited commercial transactions that sometimes involve out-of-state participants.  Indeed, such a rule would put many local laws to the test simply because they regulate businesses involved in interstate transactions.

6

Plaintiffs' equal protection claim fares no better in terms of its likelihood of success. Plaintiffs contend that they have been treated differently than other similarly situated property owners who operate short-term rentals because the City issued permits to some property owners during the moratorium but not to others like Plaintiffs.  However, Plaintiffs do not attempt to demonstrate that they are similarly situated with other homeowners who received a permit after the moratorium.  Plaintiffs do not contend that they qualified for any exceptions to the moratorium, and there is no evidence that they would qualify for a permit even without the moratorium. Ordinance 237 requires a permit applicant to provide certain information and certify specific facts about their home.  (*See* Ordinance 237, Section 11-3, ECF No. 1-1.)  Plaintiffs simply allege in their complaint that their permit application included "all the information and application fees required under Ordinance 237 and is otherwise consistent with Section 11-3 of the Ordinance." (Compl. ¶ 52.)  That permit application is conspicuously absent from the evidence provided to the Court.

In addition, to be successful on their equal protection claim, Plaintiffs will have to show that the City's disparate treatment "either burdens a fundamental right, targets a suspect class, or has no rational basis."  *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby*, 470 F.3d 286, 298 (6th Cir. 2006).  Plaintiffs do not plausibly contend that the City's actions implicate a fundamental right or a suspect class.  Nor do they persuasively argue that there is no rational basis for the City's decision.  The City ostensibly passed Ordinance 237 to monitor the use of homes for short-term rentals and to ensure that they were being used "in a safe and controllable manner and for the well-being of the community."  (Compl. ¶ 1.)  It then issued the moratorium because it was concerned about the community impacts of using homes for short-term rentals.  (*Id.* ¶ 34.)  It later granted a limited exception to the moratorium to homeowners who had made "substantial

investments in prospective rental properties" within a short period prior to the date of the moratorium, ostensibly because the City wanted to honor those investment interests.  (*See id.* ¶ 37.) No evidence suggests that there was anything irrational or arbitrary about these decisions.

Plaintiffs contend in their brief, but not in their complaint, that they were treated differently from an unidentified City employee who did not qualify for any exceptions to the moratorium but received a permit anyway.  No evidence supports that assertion, however.  Plaintiffs do not even identify that employee.

Plaintiffs' due process claims have similar problems.  Plaintiffs apparently contend that the City denied them substantive due process by depriving them of the right to "operate their business [and] use their property" without a corresponding "rational relationship to a legitimate government interest."  (Pls.' Mem. in Supp. of Mot. 21-23, ECF No. 3.)  The available evidence suggests otherwise.  Local governments have a legitimate interest in regulating the use of property within their jurisdiction, and there is no indication that the City's actions in this case were arbitrary or unrelated to legitimate interests.

Plaintiffs also contend that that the City deprived them of a property interest in or legitimate claim of entitlement to a rental permit without giving them notice or adequate process.  However, Plaintiffs did not possess a permit in the first place and, as discussed above, they have not shown that they would have qualified for one before the moratorium.

### B. Irreparable Harm

Even if Plaintiffs had demonstrated a strong or substantial likelihood of success on these or any other claims in their complaint, and even if other factors clearly weighed in their favor, Plaintiffs are not entitled to a preliminary injunction because they have not demonstrated the "'single most important prerequisite'" to such relief, which is the likelihood of irreparable harm. *Sumner Cnty. Schs.*, 942 F.3d at 327 (quoting 11A Charles Alan Wright et al., *Federal Practice*

*and Procedure* § 2948.1 (3d ed. 1995 & Supp. 2019)).  "[T]his factor is dispositive; a plaintiff *must* present the existence of an irreparable injury to get a preliminary injunction." *Id.* (emphasis in original).

Here, Plaintiffs have provided no evidence of the existence of irreparable harm.  "A plaintiff's harm from the denial of a preliminary injunction is irreparable if it is not fully compensable by money damages." *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002).  The only real harm identified by Plaintiffs is the loss of rental income. Plaintiffs argue that, if they are not allowed to immediately begin renting their property again, they will lose customer reservations and may suffer "legal liability for breaches of contract that will likely result."  (Pls.' Mem. in Supp. of Mot. for Prelim. Inj. 25, ECF No. 3.)  The loss of reservations is fully compensable through money damages.  Plaintiffs do not specify what sort of legal liability they could incur that would be irreparable.

Plaintiffs argue that money damages are not adequate because their losses would be difficult to compute, but it is not clear why that would be the case.  A trier of fact could use Plaintiffs' income in prior years as a baseline, and then consider that baseline in conjunction with evidence of market rates for other rental homes in the area.  Plaintiffs do not contend that their home is so unique or unusual that it cannot be compared to other homes in the rental market.  And although the market for rentals in this coming year likely will not follow the trend of prior years due to the pandemic, there is no reason to believe that sufficient data will not be available to adequately calculate Plaintiffs' damages.

Plaintiffs also argue that they will lose customer goodwill, which "often amounts to irreparable injury because the damages flowing from such losses are difficult to compute." *Basicomputer Corp. v. Scott*, 973 F.2d 507, 512 (6th Cir. 1992).  However, Plaintiffs offer no facts

or evidence to support their assertion that they stand to lose goodwill, let alone that damages flowing from the loss of such would be difficult to compute.  There is no indication that, after the moratorium expires, Plaintiffs will be unable to continue renting to the same, or other, customers looking for a short-term rental in the City.  *Cf. First Energy Sols. Corp. v. Flerick*, 521 F. App'x 521, 529 (6th Cir. 2013) (finding irreparable harm where the plaintiff would be unable to recover lost business due to unfair competition).  Plaintiffs also imply that they will have to permanently shutter their rental business entirely if they cannot rent their house during the next season, but that assertion is also unsupported.  It is Plaintiffs' burden to demonstrate that they are entitled to a preliminary injunction.  The Court is not obligated accept as true facts asserted by their attorney in their briefing.

Finally, Plaintiffs compare their situation to that of an individual forced to choose between complying with an allegedly unconstitutional regulation or receiving fines from the government. That is not the choice faced by Plaintiffs.  For the reasons discussed, the Court is not persuaded that Plaintiffs are likely to succeed on the merits of their constitutional claims.  Moreover, this is not a case involving an ongoing deprivation of First Amendment rights or of a fundamental right like the right to vote, where there is a presumption of irreparable harm.  *See, e.g.*, *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012);  *Am. Civil Liberties Union of Ky. v. McCreary Cnty.*, 354 F.3d 438, 445 (6th Cir. 2003).  The harm at issue here is purely economic.  Thus, there is no reason why Plaintiffs cannot wait until the conclusion of these proceedings to obtain relief.

In summary, a preliminary injunction is not warranted.  Accordingly, Plaintiffs' motion for one will be denied.  An order will enter consistent with this Opinion.

Dated:  April 15, 2021                                    /s/ Hala Y. Jarbou
                                                                       HALA Y. JARBOU
                                                                       UNITED STATES DISTRICT JUDGE