UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOANNE MOSKOVIC, et al.,

    Plaintiffs,

v.

CITY OF NEW BUFFALO,

    Defendant.

_____/

Case No. 1:21-cv-144

Hon. Hala Y. Jarbou

RYAN NOFZIGER, et al.

    Plaintiffs,

v.

CITY OF NEW BUFFALO,

Defendant.

_____/

Case No. 1:21-cv-674

Hon. Hala Y. Jarbou

## OPINION

Plaintiffs in this consolidated action own homes in the City of New Buffalo, Michigan, that they have used, or intend to use, as short-term rental properties. In 2019, the City passed an ordinance requiring homeowners in the City to obtain a permit before using their homes as short-term rentals. In 2020, the City adopted a resolution that suspended the issuance of such permits. Plaintiffs brought this action against the City challenging the validity of that resolution under state and federal law. The plaintiffs in Case No. 1:12-cv-144 (hereinafter, "Plaintiffs") have filed a motion for partial summary judgment on Counts I and II of their complaint. For the reasons herein, the Court will deny that motion.

## I. BACKGROUND

The City of New Buffalo is located on the Lake Michigan shoreline near the Indiana border. It is a popular destination for tourists from Indiana and Illinois, especially during the summertime. Plaintiffs purchased homes in the City with the intent to rent them to visitors on a short-term basis, i.e., for terms of less than a month at a time, as was common practice.

In April 2019, after some members of the City Council became concerned about the impact of short-term rentals on the character of the community, the City passed Ordinance 237, which required homeowners to apply for and obtain a permit from the City in order to use their homes as short-term rentals. There was no cap on the number of permits that the City would issue.

On May 18, 2020, the City Council adopted Resolution 2020-11, which imposed an eight-month moratorium ("Moratorium") on all applications for, and registrations of, short-term rental units in the City. The City Council indicated that it was "concerned that further increases in short-term rentals in certain areas of the City could undermine the character and stability of neighborhoods in certain districts" by, among other things, decreasing the number of long-term residents, decreasing enrollment in schools, decreasing the availability of long-term housing, permitting significant numbers of vacant homes during winter months, and increasing noise levels, traffic, and on-street parking during summer months. (*See* 2d Am. Compl. ¶ 69, ECF No. 61.)[1] The City Council also indicated that it was considering "appropriate ordinance amendments to address this concern relating to the City's existing-short term rental ordinance[.]" (Resolution 2020-11, ECF No. 61-3.)

---

[1] All citations to the record refer to the record in Case No. 1:21-cv-144.

On June 15, 2020, the City Council adopted Resolution 2020-16, which carved out exceptions to the Moratorium for certain property owners with "investment-backed expectations" in their property. (Resolution 2020-16, ECF No. 61-6.)

On December 21, 2020, the City extended the Moratorium for an additional eight months.

On May 17, 2021, the City Council adopted Ordinance 248, which amended Ordinance 237 by "add[ing] additional regulatory processes applicable to obtaining, maintaining, and transferring a short-term rental permit." (2d Am. Compl. ¶ 141.) The Moratorium continued.

On August 31, 2021, the City Council adopted Resolution 2021-21, which extended the Moratorium for another two months, until November 1, 2021. That same day, the City Council proposed an ordinance that would prohibit short-term rentals in the "R-1, R-2, and R-3 zoning districts." (*Id.* ¶ 148.) Those are the districts where Plaintiffs' properties are located.

On October 18, 2021, the City Council adopted Resolution 2021-22, which extended the Moratorium through December 13, 2021.

On November 23, 2021, the City Council adopted Ordinance 253, which prohibits the use of homes as short-term rentals in the R-1, R-2, and R-3 residential zoning districts. (*Id.* ¶ 171.) That ordinance became effective on December 13, 2021, the day that the Moratorium expired.

Plaintiffs submitted applications for short-term rental permits while the Moratorium was in effect. The City allegedly responded to these applications by stating that it would not process them due to the Moratorium.

## II. PROCEDURAL HISTORY

Plaintiffs initially filed this action in February 2021. Among other things, Plaintiffs claimed that the Moratorium was invalid because the Moratorium effectively suspended the operation of Ordinance 237, but a resolution cannot suspend an ordinance. Plaintiffs have referred to this principle as the "doctrine of legislative equivalency." (Compl. ¶ 59, ECF No. 1.) Plaintiffs

3

sought preliminary injunctive relief, which the Court denied on April 15, 2021, for failure to demonstrate irreparable harm. (*See* Op. & Order, ECF Nos. 22, 23.)

Plaintiffs subsequently amended their complaint, keeping the doctrine of legislative equivalency as the basis for Count I. They also added a claim that the Moratorium was invalid because it did not comply with the requirements of Michigan's Zoning Enabling Act (MZEA), Mich. Comp. Laws § 125.3101 et seq. (*See* 1st Am. Compl., ECF No. 30.) The latter claim is Count II of the First Amended Complaint.

Plaintiffs filed their motion for partial summary judgment in July 2021, seeking judgment on Counts I and II of the First Amended Complaint. In December 2021, while that motion was pending, Plaintiffs filed a second amended complaint. The Second Amended Complaint reiterates the claims in Counts I and II of the First Amended Complaint and asserts seven other claims. (*See* 2d Am. Compl., ECF No. 61.) It also makes clear that the Moratorium expired in December 2021.

On January 12, 2022, the Court ordered the parties to appear for oral argument on the motion for partial summary judgment. (*See* Order, ECF No. 72.) The Court instructed the parties to address the following questions:

> (1) Does the filing of Plaintiffs' Second Amended Complaint render their motion for partial summary judgment on the First Amended Complaint moot?
>
> (2) What impact does the expiration of the moratorium have on Plaintiffs' right to relief under Counts I and II? In other words, even if the moratorium was invalid for the reasons asserted in Counts I or II, what relief is still available under those claims? Declaratory relief? Would Plaintiffs be entitled to retrospective relief (i.e., damages) against the City for enforcing a resolution that a court later determined was invalid?

(*Id.*, PageID.2957.)

Plaintiffs provided a written response to the Court's order (*see* ECF No. 80) and the parties appeared before the Court for oral argument on January 31, 2022.

### III. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Summary judgment is not an opportunity for the Court to resolve factual disputes. *Id.* at 249. The Court "must shy away from weighing the evidence and instead view all the facts in the light most favorable to the nonmoving party and draw all justifiable inferences in their favor." *Wyatt v. Nissan N. Am., Inc.*, 999 F.3d 400, 410 (6th Cir. 2021).

### IV. MOOTNESS

#### A. Procedural Mootness

As to the first question that the Court posed to the parties, they agree that the Court can rule on Plaintiffs' motion for partial summary judgment notwithstanding the fact that Plaintiffs amended their complaint after filing their motion. An amended complaint typically replaces the previous version, but here Counts I and II of the Second Amended Complaint are substantially similar to Counts I and II of the First Amended Complaint. "Some courts have determined that a dispositive motion is not moot 'when the amended complaint is substantially identical to the original complaint.'" *Williamson v. Freytag*, No. 2:18-CV-141, 2020 WL 1975411, at *1 (W.D. Mich. Apr. 24, 2020) (quoting *Greater Cincinnati Coal. for Homeless v. City of Cincinnati*, No. 1:08-CV-603, 2009 WL 3029661, at *3 (S.D. Ohio Sept. 16, 2009)). And that is the case here, at least as far as Counts I and II are concerned. Thus, the Court will construe Plaintiffs' motion as if it were seeking summary judgment on Counts I and II of the *Second* Amended Complaint.

### B. Substantive Mootness

On the other hand, the parties disagree as to whether Counts I and II are mooted by the fact that circumstances have changed since Plaintiffs filed their motion. Counts I and II challenge the validity of the Moratorium, but the Moratorium no longer exists. It expired and the City passed an ordinance that precludes the issuance of new short-term rental permits. Plaintiffs do not contend that this new ordinance is invalid under the doctrine of legislative equivalency or under the MZEA. Thus, the Court must consider whether Plaintiffs' claims in Counts I and II are effectively moot at this point.

"'Mootness results when events occur during the pendency of the litigation which render the court unable to grant the requested relief.'" *Burger v. Cuyahoga Cnty. Bar Ass'n*, 983 F.2d 718, 724 (6th Cir. 1993) (quoting *Carras v. Williams*, 807 F.2d 1286, 1289 (6th Cir. 1986)). Mootness is an issue that the Court can raise *sua sponte*. *Jones v. Caruso*, 421 F. App'x 550, 551 (6th Cir. 2011).

"A federal court 'lacks jurisdiction to consider any case or issue that has lost its character as a present, live controversy and thereby becomes moot.'" *Kerr for Kerr v. Comm'r of Soc. Sec.*, 874 F.3d 926, 930 (6th Cir. 2017) (quoting *Demis v. Sniezek*, 558 F.3d 508, 512 (6th Cir. 2009)). "Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Id.* at 931 (quoting *Demis*, 558 F.3d at 512). Put another way, "if in the course of litigation a court finds that it can no longer provide a plaintiff with any effectual relief, the case generally is moot." *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 796 (2021).

In response to the Court's order to clarify what relief is still available under Counts I and II, Plaintiffs argue that the Court can declare the Moratorium invalid and enjoin its enforcement. However, a declaration would serve no purpose at this point. It would have no practical effect.

6

Moreover, this Court cannot enjoin the enforcement of something that no longer exists. *See Brandywine, Inc. v. City of Richmond*, 359 F.3d 830, 836 (6th Cir. 2004) ("We can neither declare unconstitutional nor enjoin the enforcement of a provision that is no longer in effect."); *accord Ostergren v. Governor of Mich.*, No. 353732, 2021 WL 1050367, at *2-3 (Mich. Ct. App. Mar. 18, 2021) ("Plaintiffs seek declaratory and injunctive relief with respect to EO 2020-38. But EO 2020-38 no longer exists. . . . There is thus no meaningful relief that this Court can grant plaintiffs.").

Plaintiffs do not contend that there is an exception to mootness in these circumstances. For instance, there is no indication that a moratorium like the one at issue is "'capable of repetition yet evading review.'" *Pleasant View Baptist Church v. Beshear*, 838 F. App'x 936, 938 (6th Cir. 2020) (quoting *Fed. Election Comm'n v. Wisc. Right to Life, Inc.*, 551 U.S. 449, 462 (2007)). Indeed, there is no need for Defendant to suspend the issuance of short-term rental permits to Plaintiffs in the future because Ordinance 253 ostensibly prohibits Plaintiffs from using their homes as short-term rentals. (*See* 2d Am. Compl. ¶¶ 39, 171.)

Plaintiffs also argue that, if the Court were to find that the Moratorium was invalid, the Court could issue an injunction requiring the City to consider their permit applications under the law in effect at the time that they filed those applications (i.e., Ordinance 237). Plaintiffs rely on *Bittenger v. Corp. of Bolivar*, 395 S.E.2d 554 (W. Va. 1990), but the relief they describe conflicts with Michigan law, which recognizes that, in general, "'the law to be applied is that which was in effect at the time of decision [by the trial court]. Thus, if a zoning ordinance has been amended [after suit was filed] . . . a court will give effect to the amendment[.]'" *Grand/Sakwa of Northfield, LLC v. Northfield Twp.*, 851 N.W.2d 574, 578 (Mich. Ct. App. 2014) (quoting *Klyman v. City of*

7

*Troy*, 198 N.W.2d 822, 824 (Mich. Ct. App. 1972)). At present, the law in effect is Ordinance 253, not Ordinance 237.

The foregoing rule has "two narrow exceptions." *Id.* "'A court will not apply an amendment to a zoning ordinance where (1) the amendment would destroy a vested property interest acquired before its enactment, or (2) the amendment was enacted in bad faith and with unjustified delay.'" *Id.* (quoting *Rodney Lockwood & Co. v. City of Southfield*, 286 N.W.2d 87, 89 (Mich. Ct. App. 1979)). However, Plaintiffs' briefing does not address these exceptions. Plaintiffs do not argue that either of the exceptions applies here.[2]

In light of the Michigan precedent discussed above, the Court is not persuaded that a Michigan court would reach the same result as the West Virginia court in *Bittenger*. *See Tuscola Wind III, LLC v. Ellington Twp.*, No. 17-cv-11025, 2018 WL 3609550, at *6 (E.D. Mich. July 27, 2018) (rejecting a similar argument in a case where a moratorium expired while the lawsuit was pending). In other words, the Court is not persuaded that a Michigan court would issue an injunction requiring the City to consider Plaintiffs' permit applications under Ordinance 237.

Plaintiffs also rely on a case in which a Michigan court struck down a zoning regulation and ordered a township to consider a permit without that regulation. *See Orion Twp. v. Weber*, 269 N.W.2d 275, 280 (Mich. Ct. App. 1978). But that case is distinguishable because the township had not amended its regulation or passed a new ordinance while the lawsuit was pending. Thus, the court's order simply required the township to comply with the valid rules in effect at the time.

---

[2] Plaintiffs alluded to "vested rights" at oral argument, and to a "vested nonconforming use" in their briefing, but they did not provide any analysis of this issue to support their argument. Plaintiffs also referred to the MZEA, which states that where "use of a dwelling, building, or structure or of the land is lawful at the time of enactment of a zoning ordinance or an amendment to a zoning ordinance, then that use may be continued although the use does not conform to the zoning ordinance or amendment." Mich. Comp. Laws § 125.3208(1). According to Plaintiffs' complaint, however, their use of property for short-term rentals was not lawful under Ordinance 237 because they never obtained a permit for that use. Thus, on its face, that provision in the MZEA does not apply.

In contrast, Plaintiffs ask the Court to ignore Ordinance 253. For the reasons discussed, the Court is not persuaded that it can do so.

Finally, Plaintiffs argue that they are entitled to damages for the City's allegedly improper suspension of the permitting process. It is true that, "'so long as the plaintiff has a cause of action for damages, a defendant's change in conduct will not moot the case.'" *Gottfried v. Med. Planning Servs., Inc.*, 280 F.3d 684, 691 (6th Cir. 2002) (quoting *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 608-09 (2001)). But here, Plaintiffs have not identified any Michigan law or precedent that would give them a right to damages for the type of violations alleged in Counts I and II. Not every injury has a remedy and not every unlawful act gives rise to a cause of action for damages. The Court will not assume that such a remedy exists or rely on its general equitable powers to award damages absent authority for doing so under state law.[3]

## V. CONCLUSION

In short, at this stage of the proceedings, the Court is not persuaded that it can grant any relief on Counts I and II, which challenge the validity of a moratorium that no longer exists. Neither Plaintiffs' motion for summary judgment on those claims, nor their subsequent briefing, adequately account for the fact that the Moratorium has expired. Plaintiffs cite no persuasive authority for the proposition that the Court can award meaningful relief in these circumstances. Plaintiffs might be entitled to some form of injunctive relief if they can satisfy an exception to the general rule that the Court is obligated to apply the zoning law in effect at the time of its decision. However, Plaintiffs have not squarely addressed that issue.

---

[3] Of course, Plaintiffs might be entitled to relief under one of the claims asserted in Counts III to IX of the Second Amended Complaint, but those claims are not before the Court at this time.

If the Court lacks authority to grant meaningful relief on Counts I and II, then those claims are moot and any opinion on them would be wholly advisory. Consequently, at this stage, Plaintiffs are not entitled to summary judgment on those claims.

An order will enter consistent with this Opinion.

Dated: February 3, 2022          /s/ Hala Y. Jarbou
                                 HALA Y. JARBOU
                                 UNITED STATES DISTRICT JUDGE