UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOANNE MOSKOVIC, et al.,

    Plaintiffs,

v.

CITY OF NEW BUFFALO,

    Defendant.
_____/

Case No. 1:21-cv-144

Hon. Hala Y. Jarbou

218 S BRONSON LLC, et al.,

    Plaintiffs,

v.

CITY OF NEW BUFFALO,

    Defendant.
_____/

Case No. 1:21-cv-674

Hon. Hala Y. Jarbou

## OPINION

Plaintiffs have filed a motion for reconsideration (ECF No. 139)[1] of the Court's opinion on the parties' motions for summary judgment. For the reasons herein, the Court will deny Plaintiffs' motion.

## I. STANDARDS

Under Rule 54(b) of the Federal Rules of Civil Procedure, a non-final order is subject to reconsideration at any time before entry of a final judgment. *Id.*; *see also ACLU v. McCreary Cnty.*, 607 F.3d 439, 450 (6th Cir. 2010). Western District of Michigan Local Civil Rule 7.4(a)

---

[1] Citations to the record refer to the record in Case No. 1:21-cv-144.

also provides that "motions for reconsideration which merely present the same issues ruled upon by the court shall not be granted." Further, reconsideration is appropriate only when the movant "demonstrate[s] a palpable defect by which the court and the parties have been misled . . . [and] that a different disposition of the case must result from a correction thereof." *Id.*

Because Plaintiffs oppose the Court's conclusion that the City is entitled to summary judgment, the summary judgment standards also apply. The Court must view all the facts and evidence in the light most favorable to Plaintiffs and decide whether there is a genuine dispute of material fact requiring submission of the case to a jury. (*See* 10/31/2022 Op. 8-9, ECF No. 134.)

## II. PROCEDURAL HISTORY

Plaintiffs' motion for reconsideration focuses primarily on whether or not the City's original Zoning Ordinance (the "ZO") permitted the use of single-family homes located in the R-1, R-2, and R-3 zoning districts as short-term rentals. Plaintiffs alluded to this issue in their summary judgment briefing but did not provide the Court with any analysis of the text of the ZO to support their position. When reviewing that ordinance, this Court concluded it did not permit such uses. (*See* 10/31/2022 Op. 12-15.)

Some of Plaintiffs' claims, including their takings claim, require them to show that the City deprived them of a protected property interest. Among other things, Plaintiffs asserted a protected interest in the use of their homes as short-term rentals before the City amended the ZO. Plaintiffs argued that the City's recent amendment of the ZO illegally deprived them of their right to continue using their homes as short-term rentals because that use qualified as a prior nonconforming use. "A prior nonconforming use is a vested right in the use of particular property that does not conform to zoning restrictions, but is protected because it lawfully existed before the zoning regulation's effective date." *Heath Twp. v. Sall*, 502 N.W.2d 627, 629 (Mich. 1993). "To be protected, the nonconforming use must have been legal at one time; a use that violates the zoning ordinances

2

since its inception does not draw such protection." *Lyon Charter Twp. v. Petty*, 896 N.W.2d 477, 481 (Mich. Ct. App. 2016).  The Court reasoned that, because the ZO did not permit short-term rentals, Plaintiffs' prior uses were not lawful.  Consequently, Plaintiffs do not possess a protected property interest in those nonconforming uses.

### A. Procedural Challenges

Plaintiffs assert several procedural errors in the Court's decision.

#### 1. Granting Summary Judgment to the City

First, Plaintiffs contend that it was improper for the Court to rule in favor of the City based on the Court's interpretation of the ZO because the City did not raise this issue in its motion for summary judgment.  Plaintiffs moved for summary judgment on two counts of the complaint, Count V (substantive due process) and Count VII (equal protection), and the City moved for summary judgment on all counts.  When seeking summary judgment on their substantive due process claim, Plaintiffs argued that they possessed a protected interest in the use of their homes as short-term rentals because those uses were permitted under the ZO.  (Pls.' Br. in Supp. of Mot. for Summ. J. 15-16, ECF No. 118.)  Plaintiffs relied on deposition testimony by the City Attorney, Nick Curcio, instead of the text of the ordinance itself.  (*Id.*; *see* Curcio Dep. 49, ECF No. 118-25 (stating that "the City Zoning Ordinance . . . doesn't mention short-term rentals, but . . . the City has interpreted" the ordinance to permit them).)  The City Attorney had also explained at a board meeting in October 2020 that the ZO does not mention short-term rentals, but the City had interpreted it to allow them as part of "the various permitted dwelling uses."  *See* 10/12/2020 Meeting Video, available at https://cityofnewbuffalo.org/meetings/city-council-planning-commission-special-joint-meeting-october-12-2020/.

The City responded that Plaintiffs' reliance on statements by the City Attorney was misplaced and that the ZO did not permit short-term rentals *because* that use was not expressly

3

mentioned in the ZO. (Def.'s Resp. Br. 2-3, ECF No. 121.) As indicated below, the ZO prohibits uses that are not specifically permitted. In their reply, Plaintiffs did not address the City's textual argument. Instead, they relied upon the City's "witnesses and actions[.]" (Pls.' Reply Br. 2-3, ECF No. 122.)

In the City's own motion for summary judgment, it argued that Plaintiffs lacked a protected property interest for a different reason. It argued that Plaintiffs never obtained a permit to use their homes as short-term rentals as required by the City's regulatory ordinance, Ordinance 237. The City *assumed*, without conceding, that the ZO permitted short-term rentals. (Def.'s Mot. for Summ. J. 25, ECF No. 117.) In other words, the City did not expressly argue in support of its own motion that the ZO prohibited short-term rentals.

After reviewing the parties' arguments and the text of the ZO, the Court concluded that the ZO did not permit short-term rentals. Consequently, Plaintiffs could not claim that the City deprived them of a protected property interest in such use. (10/31/2022 Op. 40-41.) Accordingly, the Court granted summary judgment in favor of the City on Plaintiffs' takings claim.

Plaintiffs are correct that the City did not rely on the text of the ZO when seeking summary judgment on the takings claim. However, Plaintiffs put the interpretation of the ZO before the Court when asserting that the ZO permitted them to use their properties as short-term rentals. To address that issue, the Court examined the ZO and concluded that it did not permit short-term rentals. A necessary consequence of that conclusion was that Plaintiffs could not rely on the use of their properties as short-term rentals to establish a vested property interest. In addition, Plaintiffs could not establish a basis for their takings claim.

Even if the City did not rely on the text of the ZO when seeking summary judgment, the Court could grant summary judgment in the City's favor on the issue. The Court has authority to

4

"enter summary judgments *sua sponte*, so long as the losing party was on notice that she had to come forward with all her evidence." *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986). Here, Plaintiffs were on notice of the City's motion for summary judgment and of the evidence necessary to support their claims. That evidence included the ZO, a copy of which Plaintiffs provided to the Court. They were also on notice that their interpretation of the ZO was a critical component of their claims. Thus, the Court did not make a procedural error when granting the City summary judgment on that issue.

In any case, even if the Court erred, Plaintiffs have now provided textual arguments for their interpretation of the ZO. The Court will consider Plaintiffs' arguments, rendering any possible error harmless.

### 2. Failing to Consider the Testimony of Watson

Next, Plaintiffs also contend that the Court failed to consider the testimony of the City's 30(b)(6) witness, Darwin Watson,[2] who purportedly admitted that the ZO permitted short-term rentals. The Court did not fail to consider this testimony. Instead, the Court did not discuss it because it does not support Plaintiffs' position. In his deposition, Watson agreed that the City Attorney stated at a meeting in October 2020 that short-term rentals "were a permitted use in all residential restrictions, by right, under the City's zoning ordinance[.]" (Watson Dep., ECF No. 117-17, PageID.3850-3851.) And Watson agreed with the City Attorney's deposition statement that "short-term rentals remained a permitted use in all residential districts under the City Zoning Ordinance until the City amended its zoning ordinance by adopting Ordinance 253[.]" (*Id.*, PageID.3858.) However, Watson also stated that he disagreed with the City Attorney's interpretation of the ZO because "there is nothing in the zoning ordinance . . . that speaks about

---

[2] Watson was the City Manager from 2014 to 2019. (Watson Dep., ECF No. 117-17, PageID.3732.)

short-term rentals." (*Id.*, PageID.3853-3857.)  Thus, contrary to Plaintiffs' assertion, Watson did not adopt the City Attorney's interpretation of the ZO.  At most, he agreed that the City had permitted short-term rentals under the ZO, which is not disputed.  The City did not take steps to restrict short-term rentals until it passed Ordinance 237, which required home owners to obtain a permit for that use.  And those who obtained a permit were allowed to use their homes as short-term rentals.

But even if Watson agreed that the ZO permitted short-term rentals, the City's witnesses cannot make an admission about the law.  It is the Court's province and duty to "say what the law is."  *Marbury v. Madison*, 5 U.S. 137, 177 (1803).  Statements by the parties do not control the Court's analysis of the ZO.  The Court looks first and foremost at the text of the ZO to ascertain its meaning.  (*See* 10/31/2022 Op. 14 (citing *Brandon Charter Twp. v. Tippett*, 616 N.W.2d 243, 245 (Mich. Ct. App. 2000).)

To the extent Watson's testimony is relevant to the City's past practice of allowing short-term rentals, that practice does not transform Plaintiffs' uses of their properties as short-term rentals into a vested property interest.  *See Lyon Charter Twp. v. Petty*, 896 N.W.2d 477, 481 (Mich. Ct. App. 2016) ("[A] historical failure to enforce a particular zoning ordinance, standing alone, is insufficient to preclude enforcement in the present."); *accord Reaume v. Twp. of Spring Lake*, 937 N.W.2d 734, 742 (Mich. Ct. App. 2019), *overruled on other grounds by* 943 N.W.2d 394 (Mich. 2020).  Accordingly, Watson's testimony does not change the outcome of the Court's decision.

Plaintiffs also note in their reply brief that the City's former Mayor, Louis O'Donnell, also made statements about the ZO in his deposition.  He initially testified that he did not know whether the ZO permitted short-term rentals, but then he agreed with the City's Attorney's statement from

October 2020 that "short-term rentals were a permitted use" under the ZO. (O'Donnell Dep. 71-73, ECF No. 121-6.)  For the reasons discussed above and below with respect to Watson and Curcio, O'Donnell's statements do not alter the Court's conclusions about the ZO.

### B. Substantive Challenges

Plaintiffs also contend that the Court erred when interpreting the ZO.  They now provide arguments as to why the Court should interpret the ZO as permitting short-term rentals.

#### 1. Textual Analysis

The court "interpret[s] ordinances in the same manner that [it] interpret[s] statutes." *Brandon Charter Twp.*, 616 N.W.2d at 245.

> If the language is clear and unambiguous, the courts may only apply the language as written.  However, if reasonable minds could differ regarding the meaning of the ordinance, the courts may construe the ordinance.  [The courts] follow these rules of construction in order to give effect to the legislative body's intent.

*Id.* (citations omitted).  "When interpreting the language of an ordinance to determine the extent of a restriction upon the use of property, the language must be interpreted, where doubt exists regarding legislative intent, in favor of the property owner."  *Talcott v. City of Midland*, 387 N.W.2d 845, 847 (Mich. 1985).

Section 1-4 of the ZO provided, in relevant part:

> D.  Applicability of zoning ordinance regulations.  Except as otherwise provided for in this ordinance, every building and structure erected, every use of any lot, building, or structure established, every structural alteration or relocation of an existing building or structure, and every enlargement of, or addition to, an existing use, building and structure occurring after the effective date of this ordinance, shall be subject to this ordinance

> E.  Uses permitted by right. All land development specifically listed under the heading "Uses Permitted by Right" shall be allowed when determined to be in accordance with all provisions of this ordinance and all other applicable laws, regulations or ordinances having jurisdiction over the proposed use of land. *Where not specifically permitted, uses are prohibited, unless construed to be similar to a use as expressly determined in accordance with Section 1-4G*.

\*\*\*

G. Uses not specifically mentioned.

1. Any use of land or development activity not specifically mentioned in this ordinance may be classified by the Zoning Administrator as the use most similar in character to the proposed use.

2. If the Zoning Administrator needs further interpretation of the proposed use, the Official may refer the proposed use to the Board of Zoning Appeals for classification.

3. If the Board of Zoning Appeals finds that the use is not similar in character to uses listed in the Ordinance they shall so find. The applicant may then make application to the Planning Commission for consideration of an amendment to the Zoning Ordinance to include the proposed use in one or more of the zoning districts of this ordinance, either as a Use Permitted by Right or a Use Permitted by Special Land Use.

(Zoning Ordinance, ECF No. 120-4, PageID.4767-4768 (emphasis added).)

Plaintiffs rely on the uses "permitted by right" in the R-1, R-2, and R-3 residential zoning districts. For those districts, the ZO stated, in relevant part:

## ARTICLE 6
## R-1 Single Family District

**Section 6-1. Intent and purpose.**

This district is intended primarily for single-family detached residential use and support services or facilities which are typically found in single-family areas and which can be located in a manner to be compatible with the single-family neighborhood.

**Section 6-2. Uses permitted by right.** [Amended 2-19-2008 by Ord. No. 175]

Land and/or buildings in the R-1 District may be used for the following purposes by right:

A. Single-family detached dwelling units.

B. Accessory uses pursuant to Section 3-2.

C. Home occupations pursuant to Section 3-26.

D. State-licensed residential care family facilities.

E. State-licensed family day-care centers.

F. Municipal parks.

*\* \* \**

# ARTICLE 7
# R-2 Medium Density Residential District

**Section 7-1. Intent and purpose.**

This district is intended primarily for single-family detached and two-family dwellings and support services or facilities which are typically found in residential areas and which can be located in a manner to be compatible with such residential uses.

**Section 7-2. Uses permitted by right.** [Amended 2-19-2008 by Ord. No. 175]

Land and/or buildings in the R-2 District may be used for the following purposes by right:

A. Single-family detached dwelling units.

B. Two-family dwelling units.

C. Accessory uses pursuant to Section 3-2.

D. Home occupations pursuant to Section 3-26.

E. State-licensed residential care family facilities.

F. State-licensed family day-care centers.

G. Municipal parks.

*\* \* \**

# ARTICLE 8
# R-3 High Density Residential District

**Section 8-1. Intent and purpose.**

This district is intended for buildings containing multiple-dwelling units, including both attached single-family dwelling units and apartment-style residential development.  It is intended to provide additional variety in housing opportunity and choices, and to recognize the need to provide affordable housing.

**Section 8-2. Uses permitted by right.** [Amended 2-19-2008 by Ord. No. 175; 6-17-2019 by Ord. No. 238]

9

Land and/or buildings in the R-3 District may be used for the following purposes by right:

A. Multiple-family dwelling units, including single-family attached dwelling units, and apartment buildings.

B. Single-family detached dwelling units.

C. Accessory buildings and uses associated with the above permitted uses . . . .

D. Home occupations pursuant to Section 3-26.

E. State-licensed residential care family facilities.

F. State-licensed family day-care centers.

G. Municipal parks.

H. Public utility or service buildings, not requiring the outdoor storage of materials.

(Zoning Ordinance, PageID.4814, 4816, 4818.)

Specifically, Plaintiffs contend that the use of their homes for short-term rentals fits within the definition of single-family dwelling units. The ZO defines "dwelling," "single-family dwelling," and "family" as follows:

DWELLING — A detached building or portion thereof designed or used exclusively as the home, residence or sleeping place of one or more persons, not including accessory buildings or structures, either attached or detached. . . .

\* \* \*

DWELLING, SINGLE-FAMILY — A detached building, designed for or occupied exclusively by one family.

\* \* \*

FAMILY –

A. An individual or group of two or more persons related by blood, marriage, or adoption, together with foster children and servants of the principal occupants who are domiciled together as a single housekeeping unit in a dwelling unit; or

B. A collective number of individuals domiciled together in one dwelling unit whose relationship is of a continuing, non-transient domestic character and who are cooking and living as a single nonprofit housekeeping unit. This definition

10

> shall not include any society, club, fraternity, sorority, association, half-way house, lodge, coterie, organization, group of students, or other individual whose domestic relationship is of a transitory or seasonal nature, is for an anticipated limited duration of school term or during a period of rehabilitation or treatment, or is otherwise not intended to be of a permanent nature

(*Id.*, PageID.4775-4776.)

Plaintiffs note that the definition of single-family dwelling requires that the building be "designed for *or* occupied exclusively by one family." (*Id.* (emphasis added).) Plaintiffs apparently contend that the "or" in that definition means that, because their homes are *designed* to be occupied by one family, those homes fit that definition, no matter how they are actually used or occupied. Plaintiffs also contend (without support) that they rent their homes as a sleeping place for one family at a time, so their rental use is consistent with the definition as well.

Plaintiffs' interpretation does not fit with the rest of the ZO and would lead to absurd results. In particular, Plaintiffs' reliance on the design of their homes would render their homes acceptable for almost any use, whether commercial, recreational, industrial, or otherwise, when that is clearly not the intent of the ZO. In general, the ZO relegates residential uses, commercial uses, and industrial uses to different districts. That segregation would disintegrate if a person could use a single or multi-family dwelling for industrial or commercial purposes simply because that building was *designed* for use by one or more families.

The reason for the "designed or used" disjunction in the definition of single-family dwelling is better explained by the ZO's distinction between the "use of land" and "development activity." (*Id.*, PageID.4767.) Or as the ZO puts it elsewhere, the "right to continue a land use or activity" as opposed to the right to "construct a building or structure." (*Id.*) The ZO defines "land use" as "[a] description of how land is occupied or utilized." (*Id.*, PageID.4778.) And the ZO defines "development" as

11

> The construction, reconstruction, conversion, structural alteration, relocation, or enlargement of any structure; and mining, excavation, landfilling or land disturbance, and any extension of an existing use of land.

(*Id.*, PageID.4774.) Relatedly, the ZO gives separate definitions for a "nonconforming *use*" and a "nonconforming *building*." (*Id.*, PageID.4781 (defining these terms; emphases added).) These separate definitions are necessary because ZO specifies both the *design* of structures that may be constructed in certain areas, including their placement and dimensions, *as well as* the manner in which occupants may *use* those structures. The design is relevant to the development and construction stage. Here, the ZO permits the construction of buildings designed as single-family dwellings in the R-1, R-2, and R-3 districts. The use of those buildings becomes relevant after their construction is complete. After all, it would make no sense to tell developers that they can only construct dwellings that are currently occupied or used in a particular manner. Thus, the "or" in the definition of single-family dwellings accounts for those two different stages. Relevant here is the *use* of Plaintiffs' homes when occupied, not just their design. Consequently, the ZO required that Plaintiffs use their single-family dwellings "as the home, residence, or sleeping place of" one "family."

Plaintiffs' interpretation also fails to account for the ZO's definition of "family." Under the ZO, a family is either (1) a group of individuals related by blood who are "domiciled together," or (2) a group of individuals "domiciled together" in a relationship that is of a "continuing, non-transient domestic character." (*Id.*, PageID.4776.) Short-term renters are not "domiciled" with one another when using a rental home. *See Concerned Prop. Owners of Garfield Twp., Inc. v. Charter Twp. of Garfield*, No. 342831, 2018 WL 5305235, at *2 (Mich. Ct. App. Oct. 25, 2018) (Murphy, J., concurring) ("[D]omiciled together . . . in a dwelling unit indicat[es] permanence not transience. A family renting a dwelling for a short period is not *domiciled* together in the dwelling.") (citations omitted). Instead, they are more like the "transient" guests of a bed-and-

12

breakfast or motel. (*See* Zoning Ordinance, PageID.4773, 4780 (defining "bed-and-breakfast" as a "use within a single-family dwelling in which transient guests are provided a sleeping room, breakfast and access to bathing and lavatory facilities in return for payment" and defining "motel" as a series of rental units in which "transient, overnight, lodging or boarding are offered to the public for compensation").) The ZO permitted the latter uses in the "central business district" and the "general commercial district," not in the three residential districts where Plaintiffs' homes are located. (*See id.*, PageID.4826, 4831.) Thus, the definition of single-family dwelling did not encompass the use of such buildings for short-term rentals.

The stated intents and purposes for the R-1, R-2, and R-3 districts support this interpretation. According to the ZO, the R-1 district "is intended primarily for . . . residential use[.]" (Zoning Ordinance, PageID.4814.) Buildings in the R-2 district are intended to be "compatible with" single-family and two-family "residential uses." (*Id.*, PageID.4816.) And the R-3 district is intended for single-family and "apartment-style" "residential development." (*Id.*, PageID.4818.) Like the word domicile, the term "residential" connotes "permanence" and a "continuity of presence" that is generally inconsistent with the use of property for short-term rentals. *See Concerned Prop. Owners*, 2018 WL 5305235, at *3 (noting that "the term 'residence' excludes uses of a transitory nature") (citing *O'Connor v. Resort Custom Builder, Inc.*, 591 N.W.2d 216, 221 (Mich. 1999)).

Also, as some Michigan courts have noted, "commercial or business uses of property— that is, uses intended to generate a profit—are generally inconsistent with residential uses of property." *Reaume*, 937 N.W.2d at 742 (citing *Terrien v. Zwit*, 648 N.W.2d 602, 605-07 (Mich. 2002)). The use of a home for short-term rentals is a commercial or business use. *See id.*; *see also People v. Dorr*, No. 349910, 2020 WL 6374724, at *2 (Mich. Ct. App. Oct. 29, 2020) ("Because

13

defendant was engaged in using his home to offer short-term *rental* accommodations, he was operating a business out of his home."); *John H. Bauckham Tr. v. Petter*, No. 332643, 2017 WL 4158025, at *4 (Mich. Ct. App. Sept. 19, 2017) ("The act of renting property to a third-party for any length of time involves a commercial use because the property owner is likely to yield a profit from the activity."). Although not dispositive here, the tension between commercial activity and residential uses further supports the Court's interpretation of the ZO.[3]

The City characterizes Plaintiffs' use of their homes for short-term rentals as "home occupations," which the ZO permitted only in certain circumstances. (*See* Zoning Ordinance, PageID.4805.) A home occupation is "[an] occupation customarily conducted in a dwelling unit that is clearly an incidental and secondary use of the dwelling." (*Id.*, PageID.4778.) The City contends that Plaintiffs' short-term rental uses were not proper home occupations because they were the primary, rather than incidental and secondary, uses of their homes. However, Plaintiffs note that they did not live in their properties and did not physically conduct their rental activities in those properties. They lived elsewhere. Consequently, they were not conducting their occupations from within the single-family dwellings that they own in the City. For the same reason, the Court is not persuaded that the home-occupation restriction applies here. *Cf. Dorr*, 2020 WL 6374724, at *2 (applying a similar provision to a defendant who continued to live in his home while also renting it for short-term rentals). Nevertheless, that restriction reinforces the ZO's intent to limit the use of single-family dwellings for commercial activity.

---

[3] Plaintiffs are correct that the R-3 district permits "apartment buildings" (Zoning Ordinance, PageID.4818), and that such buildings typically contain rental units, which also involve commercial activity. *See* Apartment, Merriam Webster Dictionary, https://www.merriam-webster.com/dictionary/apartment (defining apartment as "a room or set of rooms . . . usually leased as a dwelling."). However, the allowance of one type of commercial residential building in one residential district does not detract from the overall intent of the ZO to limit commercial activity in residential areas. That is especially true here because the apartment buildings were "intended to provide additional variety in *housing* opportunity and choices, and . . . to provide affordable *housing*." (Zoning Ordinance, PageID.4818 (emphases added).) In other words, the apartment buildings *support* residential activity; they were not intended for the temporary lodging that Plaintiffs' commercial activity provided.

Plaintiffs rely on the Michigan Supreme Court's decision in *Reaume*, in which that court held that a zoning ordinance's definition of family, which excluded transient relationships like the ZO does here, did not necessarily mean that the use of single-family homes for short-term rentals violated the ordinance. *Reaume*, 943 N.W.2d at 394. The Michigan Supreme Court held that "[t]he Court of Appeals erred by conflating the concept of a transient *relationship between people* with the concept of transient *occupancy* of the property." *Id.* (emphases added).

That decision is distinguishable because the ordinance at issue there defined a dwelling "to include a '[b]uilding . . . occupied . . . as a home, residence, or sleeping place, either permanently *or temporarily*, [by one (1) or more Families] . . . .'" *Id.* In other words, the ordinance expressly permitted the transient occupancy of dwellings. In contrast, the ZO did not expressly permit the transient use of a single-family dwelling as a home, residence, or sleeping place. Instead, as discussed above, the ZO referred to use by a group of individuals who are "domiciled" together. That term connotes a permanence of occupancy that does not apply to transient, short-term renters.

Accordingly, for all the foregoing reasons, the ZO did not permit Plaintiffs to use their homes as short-term rentals.

### 2. Deference

Alternatively, Plaintiffs argue that the Court must defer to the City's past interpretation of the ZO, as exemplified by the statements of Watson, O'Donnell, and Curcio. Plaintiffs cite *Tuscola Wind III, LLC v. Almer Charter Township*, No. 17-cv-10497, 2018 WL 1250476 (E.D. Mich. Mar. 12, 2018), but that case underscores the problem with Plaintiffs' argument. There, the plaintiffs challenged the interpretation of a zoning ordinance by the township board. *Id.* at *2. The court held that it should defer to the township board's interpretation because the board was "'the legislative body which enacted the Zoning Ordinance in the first place[.]'" *Id.* at *5 (quoting *Macenas v. Vill. of Michiana*, 446 N.W.2d 102, 110 (Mich. 1989)). The court also noted that "'[i]n

15

cases of ambiguity in a municipal zoning ordinance, where a construction has been applied over an extended period by the officer or agency charged with its administration, that construction should be accorded great weight in determining the meaning of the ordinance.'" *Id.* (quoting *Macenas*, 446 N.W.2d at 110). But here, the ZO is not ambiguous with respect to short-term rentals.

Moreover, unlike the plaintiffs in *Tuscola Wind* and *Macenas*, Plaintiffs are not challenging a decision by a zoning board or a township board applying the zoning ordinance. Statements by the City Attorney at a town hall meeting or by the City's employees during depositions are not equivalent to interpretations by a "legislative body" or by "the officer or agency" charged with administration of the ZO. Indeed, the ZO gives the Zoning Administrator and the Zoning Board of Appeals authority to decide whether particular uses are consistent with the ZO. Plaintiffs have not pointed to any instances in which the City Council, the Zoning Administrator, or the Zoning Board of Appeals concluded that the ZO permitted short-term rentals in single-family dwellings.

Furthermore, the statements by Watson, O'Donnell, and the City Attorney are not evidence of an administrative construction of the ZO "applied over an extended period." *Cf. Macenas*, 446 N.W.2d at 110. They recognize the City's past practice of not enforcing the ZO against short-term rentals, but that practice does not bind the City or this Court. *See Lyon Charter Twp.*, 896 N.W.2d at 481.

Plaintiffs cite other cases that rely on the same principle discussed in *Tuscola Wind*; those cases are distinguishable for similar reasons. *See Davis v. Bd. of Ed. for Sch. Dist. of River Rouge*, 280 N.W.2d 453, 454 (Mich. 1979) ("[T]he construction placed upon a statute by the agency legislatively chosen to administer it is entitled to great weight."); *Robinson v. City of Bloomfield Hills*, 86 N.W.2d 166 (Mich. 1957) (noting that the court's role is not to "substitute [its] judgment

for that of the legislative body charged with the duty and responsibility in the premises"); *Sinelli v. Birmingham Bd. of Zoning App.*, 408 N.W.2d 412, 414 (Mich. Ct. App. 1987) ("A zoning board of appeals has the power to interpret the zoning ordinance which it must administer. . . . [C]ourts will consider and give weight to the construction of the ordinance by those administering the ordinance."). Neither Watson, O'Donnell, nor Curcio are or were legislative bodies or enforcement agencies who rendered opinions to which this Court must defer.

Plaintiffs also rely on Ordinance 237, in which the City Council created a permit requirement for short-term rentals. However, that ordinance did not purport to interpret the ZO. It simply states that compliance with "applicable zoning, construction, fire, and property maintenance codes" is a condition for a permit. (Ordinance 237, ECF No. 61-1, PageID.2352.) And as discussed above, the ZO is not ambiguous. Accordingly, Ordinance 237 is not an interpretation of the ZO to which the Court must defer.

### III. CONCLUSION

In summary, Plaintiffs' arguments are not persuasive and do not warrant relief. Any procedural error by the Court has been rendered harmless. Further, a plain reading of the ZO indicates that it prohibited short-term rentals. Accordingly, the Court will deny Plaintiffs' motion for reconsideration because they have not shown that a different disposition of the case is warranted.

The Court will enter an order consistent with this Opinion.

Dated: January 13, 2023        /s/ Hala Y. Jarbou
                               HALA Y. JARBOU
                               CHIEF UNITED STATES DISTRICT JUDGE